IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

SAMUEL C. PIGNATO,               :
                                 :
            Plaintiff,           :
                                 :      CIVIL ACTION FILE
v.                               :      NO.: 2:19-CV-00261-SCJ-JCF
                                 :
PHH MORTGAGE CORP.,              :
                                 :
            Defendant.           :

## FINAL REPORT AND RECOMMENDATION

This matter is before the Court on Defendant PHH Mortgage Corporation's Motion to Dismiss (Doc. 5), seeking dismissal of Plaintiff's Complaint (Doc. 1). For the reasons discussed below, it is **RECOMMENDED** that PHH's motion be **GRANTED**.

## Procedural History

On November 12, 2019, Plaintiff, proceeding *pro se*, filed a Complaint against Defendant, alleging claims for violation of the Fair Debt Collection Practices Act ("FDCPA"), violation of the Fair Credit Reporting Act ("FCRA"), negligence, intentional infliction of emotional distress ("IIED"), injunctive relief, wrongful foreclosure, and violation of Georgia's Fair Business Practices Act ("GFBPA"). (Doc. 1). On December 4, 2019, Defendant moved to dismiss Plaintiff's claims

1

pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 5). Plaintiff responded to Defendant's motion on December 27, 2019. (Doc. 10). Defendant replied on January 3, 2020. (Doc. 13). With briefing now complete, the undersigned turns to the merits of Defendant's motion.

## Factual Background[1]

On April 14, 2005, Plaintiff purchased property located at 326 Fulton Road, Tiger, Georgia 30576 ("the Property") with a loan in the amount of $612,500 obtained from EverBank in exchange for a promissory note executed in EverBank's favor. (Doc. 5-1 at 2; Doc. 5-2). The promissory note was secured by a Security Deed dated April 14, 2005, granting a security interest in the property to Mortgage

---

[1] These facts are taken from Plaintiff's Complaint (Doc. 1), exhibits attached to Plaintiff's Complaint (Docs. 1-1 through 1-3), and exhibits attached to Defendant's Motion to Dismiss (Docs. 5-2 through 5-4). In ruling on a motion to dismiss, the court may consider documents attached to the motion if those documents are central to the complaint and not in dispute. *See Harris v. Ivax Corp.*, 182 F.3d 799, 802, n.2 (11th Cir. 1999); *Okim v. Bank of Am.*, No. 1:12-cv-01759-TWT-GGB, 2012 U.S. Dist. LEXIS 168788, at *7 (N.D. Ga. Oct. 25, 2012) (noting that the court is authorized to consider documents attached to motions to dismiss where "the document is central to Plaintiff's claims, and the authenticity of the document has not been challenged"). The Court may also take judicial notice of public records, such as real estate records and court filings. *See Universal Express, Inc. v. S.E.C.*, 177 Fed. Appx. 52, 53 (11th Cir. 2006). The note, security deed, and assignment attached to Defendant's motion are all central to the Complaint, and Plaintiff does not contest the authenticity of these documents. Thus, the Court considers them here.

Electronic Registration System, Inc. ("MERS") and its successors and assigns as the grantee and nominee of EverBank and its successors and assigns. (Doc. 5-1 at 2; Doc. 5-3; Doc. 1-3). The Security Deed granted MERS and its successors and assigns, among other things, "the right to foreclose and sell the Property[.]" (Doc. 5-3 at 3). The Security Deed was recorded on May 18, 2005 in the official land records of Rabun County at Book C28, Page 124. (Doc. 5-1 at 2; Doc. 5-3 at 1; Doc. 1-3.). On April 14, 2011, MERS, as nominee for EverBank, assigned all of its interest in the Security Deed to Deutsche Bank Trust Company Americas as Trustee for RALI 2005QA9 ("Deutsche Bank"), as evidenced by the assignment recorded in the official land records of Rabun County at Book E37, Page 214 ("the Assignment"). (Doc. 5-1 at 3; Doc. 5-4 at 2). Plaintiff alleges that Defendant claims to be the loan servicer for Deutsche Bank. (Doc. 5-1 at 4; Doc. 1 ¶ 31, 121; Doc. 1-3). Plaintiff sent a "Fraudulent Conversion Letter" to Deutsche Bank on April 12, 2012 disputing the abovementioned loan. (Doc. 1 ¶ 20; Doc. 1-1). He also sent a "Qualified Written Request Letter" ("QWR") to Defendant on February 26, 2013 (Doc. 1 ¶ 62; Doc. 1-2) and an undated "registered certified notice of verification" to Defendant (Doc. ¶ 65) allegedly seeking validation of the loan in question. According to Plaintiff, Defendant never validated his debt. (Doc. 1 ¶¶ 63, 65-66). Plaintiff also alleged that the debt was acquired by Defendant from Residential Finance Corporation

("Residential"), who acquired it from Deutsche Bank after the debt was in default "sometime after February 2013." (Doc. 1 ¶ 20).

On May 19, 2016, Plaintiff filed a lawsuit against Ocwen Loan Servicing, LLC ("Ocwen"), the previous loan servicer, alleging claims under the FDCPA, FCRA, and state law claims for negligence, IIED, quiet title, injunctive relief, wrongful foreclosure, and the GFBPA. *See Pignato v. Ocwen Loan Servicing, LLC*, No. 2:16-CV-00101-RWS, Doc. 1 (N.D. Ga. May 19, 2016) ("*Pignato I*"). Each of those claims was dismissed, except for his FDCPA claim, which the Court allowed him to amend. *Id.*, Doc. 10. That claim was dismissed on June 22, 2017. *Id.*, Doc. 22.

Plaintiff alleges he received a dunning notice from Defendant's attorney on September 28, 2019. (Doc. 1 ¶ 15). According to Plaintiff, that dunning notice states the debt is owed to Deutsche Bank "who is authorized to receive payment on your loan, but who may not be the reordered holder of the Security Deed." (*Id.* ¶ 44). On an unknown date, the law firm of Phelan Hallinan Diamond & Jones, PLLC advertised a Notice of Sale Under Power of the Property, scheduling a sale of the Property for December 3, 2019. (Doc. 1-3 at 2). In response, Plaintiff filed his Complaint.

**Discussion**

## I.   <u>Res Judicata</u>

Before addressing the merits of Defendant's motion, the Court finds that

Plaintiff's Complaint should be dismissed in its entirety because it is barred by the

doctrine of res judicata.[2]

"The general principle of res judicata prevents the relitigation of issues and

claims already decided by a competent court." *Cmty. State Bank v. Strong*, 651 F.3d

1241, 1263 (11th Cir. 2011). "Res judicata comes in two forms: claim preclusion

(traditional 'res judicata') and issue preclusion (also known as 'collateral

estoppel')." *Id*. "While claim preclusion bars repetitious suits involving the same

cause of action ..., issue preclusion precludes the re-adjudication of the same issue,

where the issue was actually litigated and decided in the previous adjudication, even

if it arises in the context of a different cause of action." *Id*. at 1263-64. Claim

preclusion bars Plaintiff from bringing his claims in this suit.

As the Eleventh Circuit has stated:

---

[2] Defendant does not argue the application of this doctrine in its motion. (*See* Doc. 5-1). "Although Federal Rule of Civil Procedure 8(c) classifies claim preclusion as an affirmative defense, '[d]ismissal by the court sua sponte on res judicata grounds ... is permissible in the interest of judicial economy where both actions were brought before the same court.'" *Shurick v. Boeing Co.*, 623 F.3d 1114, 1116 n.2 (11th Cir. 2010) (quoting *Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir.1980)). *Pignato I* was brought before this Court. Therefore, the Court can raise the doctrine of res judicata on its own.

It is by now hornbook law that the doctrine of res judicata "bars the filing of claims which were raised or could have been raised in an earlier proceeding." For res judicata to bar a subsequent case, four elements must be present: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases."

…

As for the fourth element, two cases are generally considered to involve the same cause of action if the latter case "arises out of the same nucleus of operative fact, or is based upon the same factual predicate," as the former one. "*Res judicata* acts as a bar 'not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact.'"

*Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1375-76 (11th Cir. 2011) (internal citation omitted).

The undersigned finds that all the elements for the application of res judicata are met. First, this Court, a court a competent jurisdiction, reached a final judgment in *Pignato I*. *See Pignato I*, Docs. 10, 22, 23. Furthermore, *Pignato I* and the instant complaint involve the same relevant parties. Plaintiff filed both *Pignato I* and this action. As for the defendants, although Plaintiff did not name Defendant in *Pignato I*, Defendant is in privity with Ocwen, the named defendant in *Pignato I*. Ocwen was the previous loan servicer of Plaintiff's mortgage. *Id.*, Doc. 15 at 3. Since that suit, Defendant has become the loan servicer on Plaintiff's mortgage. Subsequent loan servicers share the same interests as previous loan servicers, and are their privies for

6

the purposes of res judicata analysis.[3] *West v. Ocwen Loan Servicing, LCC*, 1:14-cv-3073-ELR-RGV, 2015 WL 11517085, at *8 (N.D. Ga. Mar. 18, 2015) (quoting *Elwess v. Old Republic Nat'l Title Ins. Co.*, No. CV12–1956–PHX DGC, 2013 WL 526521, at *3 (D. Ariz. Feb. 12, 2013) ("As subsequent loan servicer, Ocwen shares the same interest as [the previous loan servicer] did in Plaintiff's previous lawsuits against it.")), *adopted by* 2015 WL 11622461 (N.D. Ga. April 14, 2015).

Lastly, the same causes of action are involved in this case as were involved in *Pignato I*. Plaintiff already brought each cause of action listed in the present Complaint when he filed *Pignato I*. Here, he brings claims for violations of the FDCPA, FCRA, and GFBPA, and claims for negligence, IIED, injunctive relief, and wrongful foreclosure. (*See* Doc. 1). In *Pignato I*, Plaintiff brought claims for violations of the FDCPA, FCRA, and GFBPA, claims for negligence, IIED, declaratory judgment/quiet title, injunctive relief, and wrongful foreclosure in his original complaint. *Pignato I*, Doc. 1. Each of those claims, except his FDCPA claim, were dismissed. *Id.*, Doc. 10. In his amended complaint in *Pignato I*, Plaintiff

---

[3] Plaintiff also alleges that both Defendant and Ocwen Loan Servicing are "part of Ocwen Financial[.]" (Doc. 1 ¶ 28 n.6; *Pignato I*, Doc. 12 at 21 n.14). If Defendant and Ocwen are sister companies, then on that basis they may also be considered in privity for purposes of res judicata. *Luster v. Premier Bankcard, LLC*, No. 1:15-cv-0514-LMM, 2016 WL 7826668, at *4-6 (N.D. Ga. June 7, 2016). However, there is not enough information in the record for the Court to make that determination.

clarified his FDCPA claim, repeated his FCRA, negligence, IIED, and GFBPA claims, and brought new claims for forging closing documents and mortgage servicing fraud. *Id.*, Doc. 12. All those claims were dismissed as well. *Id.*, Doc. 22. The wording and phrasing of Plaintiff's allegations in this Complaint and his *Pignato I* complaints are nearly identical, except for a few dates and names. (*Compare* Doc. 1 *with Pignato I*, Docs. 1, 12). More importantly, the underlying bases for the claims in *Pignato I* and the instant action are the same. This action was brought by Plaintiff in response to the dunning notice he received on September 28, 2019 and the Notice of Sale scheduling a foreclosure sale of the Property for December 3, 2019 (Doc. 1 ¶ 15; Doc. 1-3), and *Pignato I* was brought in response to a dunning notice received in May 2016 and the Notice of Sale scheduling a foreclosure sale of the Property for June 7, 2016 (*Pignato I*, Doc. 1 ¶¶ 15, 27; Doc. 1-4). However, both actions rely on the same theory, Plaintiff's assertion that Defendant and Ocwen, as loan servicers acting on behalf of Deutsche Bank, do not have an interest in the subject Property and do not have standing to foreclose on it. "Indeed, both the instant action and [*Pignato I*] arise out of the same nucleus of facts, i.e., the security deed and who holds the rights to enforce it and institute foreclosure proceedings." *West*, 2015 WL 11517085, at *9. "Plaintiff[ ] now seek[s] relief that, for all intents and purposes, is the same as what [he] previously sought – recognition of [his] rights to the property

at" 326 Fulton Road, Tiger, Georgia. *Reynolds v. JPMorgan Chase Bank, N.A.*, No. 5:13-CV-440 (MTT), 2014 U.S. Dist. LEXIS 4503, at *15-16 (M.D. Ga. Jan. 14, 2014). "Thus, because this lawsuit and the Plaintiff['s] previous actions arise from the same nucleus of operative fact and concern the same subject matter, the prior and present causes of action are the same, and res judicata applies." *Id.* at *16; *see also West v. Wells Fargo Bank, N.A.,* No. 1:16-cv-393-WSD, 2017 WL 382615, at *2 (N.D. Ga. Jan. 27, 2017) (finding that the plaintiff's causes of action were barred by res judicata where multiple "lawsuits are premised on Plaintiff's allegations that Defendant does not have the authority to foreclose on the Property because Defendant was not the secured creditor, and that Defendant acted improperly as the loan servicer on behalf of HSBC").

Accordingly, it is **RECOMMENDED** that Plaintiff's Complaint be barred by res judicata and **DISMISSED**. If the Court declines to apply res judicata to the instant action, then the undersigned recommends that each cause of action be dismissed for failure to state a claim for the reasons explained below.

## II.  <u>Applicable Pleading Standards</u>

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To state a claim that can survive a motion to dismiss, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 678-79. To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

To survive a motion to dismiss, a complaint "does not need detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Redland Co. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009) (explaining that "[t]o survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above

a speculative level; if they do not, the plaintiff's complaint should be dismissed" (internal quotation omitted)).

"Additionally, because Plaintiff [is] acting pro se, [his] 'pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Shields v. Bank of Am.*, No. 2:11-CV-00267-RWS, 2012 U.S. Dist. LEXIS 30183, at * 3 (N.D. Ga. Mar. 6, 2012) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). "'This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action.'" *Id*. (quoting *Thomas v. Pentagon Fed. Credit Union*, 393 Fed. Appx. 635, 637 (11th Cir. 2010)).

### III.   **FDCPA Claims**

In his first count, Plaintiff alleges multiple violations of the FDCPA, 15 U.S.C. § 1692 et seq., including violations of §§ 1692d, 1692e, 1692e(2)(A), 1692e(5), 1692e(8), 1692e(10), 1692f, 1692g, 1692i, 1692j, and 1692k. (Doc. 1 ¶¶ 58-90).

"In enacting the FDCPA, Congress sought 'to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against

debt collection abuses.'" *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (quoting 15 U.S.C. § 1692(e)). "To prevail on an FDCPA claim, a plaintiff must establish that:

> (1)[he has] been the subject of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.

*Frazier v. Absolute Collection Serv.*, 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2010) (quoting *Buckley v. Bayrock Mortg. Corp.*, No. 1:09-cv-1387-TWT, 2010 U.S. Dist. LEXIS 10636, at *21 (N.D. Ga. Feb. 5, 2010)), *adopted by* 767 F. Supp. 2d 1354, 1359 (N.D. Ga. 2011).

Defendant argues that all the alleged FDCPA claims should be dismissed because Plaintiff (1) "fails to allege facts sufficient to infer that [Defendant] engaged in any conduct that violated the FDCPA" and (2) "fails to allege any facts sufficient to infer the FDCPA even applies to [Defendant's] activities regarding the loan." (Doc. 5-1 at 7). The Court analyzes those arguments in turn.

### a. <u>Whether Debt is a Consumer Debt</u>

Defendant argues that Plaintiff's FDCPA claims should be dismissed because he did not properly allege that the debt in question is a "consumer debt." (Doc. 5-1 at 15-16). "To recover under the FDCPA, 'a plaintiff must make a threshold showing

that the money being collected qualifies as a debt.'" *Jenkins v. McCalla Raymer, LLC*, No. 1:10-CV-03732-CAP-AJB, 2011 U.S. Dist. LEXIS 95652, at *54 (N.D. Ga. July 28, 2011) (quoting *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 837 (11th Cir. 2010)). The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

Here, in the "Request for Validation of Disputed Debt" attached to his complaint, Plaintiff conclusorily states that Defendant is attempting to collect a "household debt" as defined in 15 U.S.C. § 1692a(5). (Doc. 1 at 39). In his Complaint, he alleges he is a "consumer" as that term is defined in 15 U.S.C. § 1692a(3), because the alleged debt deals with the purchase of a home, making it a debt incurred for personal family purposes. (*Id.* ¶ 46). Plaintiff also alleges that he owns the real property in question and that it is residential. (*Id.* ¶ 2). Defendant argues correctly that those allegations alone would not satisfy Plaintiff's obligation to allege that this debt is a consumer debt. (Doc. 5-1 at 15-16). As Defendant points out, allegations that the debt in question was incurred to purchase a home does not mean the home was used for Plaintiff's own residential purposes. (*Id.*). It could have

13

been used as a rental property. Debts incurred through activity relating to rental properties or for investment purposes do not fall under the protection of the FDCPA. *See, e.g.., Frazer v. IPM Corp of Brevard*, 767 F. Supp. 2d 1369, 1378 (N.D. Ga. 2010) ("'[T]he FDCPA applies only to consumer debts and obligations; it does not apply to transactions having a business or commercial purpose.") (quoting *Booth v. Mee, Mee & Hoge, P.L.L.C.*, No. 07-cv-1360-D, 2010 U.S. Dist. LEXIS 140586, at *8 (W.D. Okla. Mar. 15, 2010)). However, Defendant ignored Plaintiff's allegation that he will be "evicted from his home" if the Court does not act promptly. (*Id.* ¶ 117). Given the generous pleading standards afforded *pro se* plaintiffs, the Court reads that allegation as sufficient to state that the property that was the subject of the loan in question was *Plaintiff's* residence, which would make the loan to purchase that residence a consumer debt under § 1692a(5). Thus, Plaintiff does properly allege this debt to be a consumer debt under the FDCPA.

### b. <u>Whether Defendant is a Debt Collector</u>

Defendant also argues that Plaintiff failed to properly allege Defendant is a "debt collector" as that term is defined by the FDCPA. (Doc. 5-1 at 13-14). Defendant is correct. The FDCPA defines a debt collector as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

14

15 U.S.C. § 1692a(6).

In his Complaint, Plaintiff alleges that "Defendant is engaged in the collection of debts from consumers using the mail and telephone. Defendant regularly attempts to collect debts alleged to be due to another." (Doc. 1 ¶ 28). Additionally, Plaintiff alleges that Defendant "sent an assortment of correspondence to Plaintiff (as so [sic] did the Defendant's attorney) which state that this is an attempt to collect a debt, which clearly states that their communication is from a debt collector".[4] (*Id.* ¶ 67). Even more specifically, Plaintiff alleged that the dunning notice he received from Defendant stated that the debt was owed to Deutsche Bank, not Defendant, implying that Defendant was collecting it on behalf of another entity. (*Id.* ¶ 44).

Plaintiff fails to sufficiently allege that Defendant is a debt collector under the FDCPA. His allegations are largely conclusory and simply parrot the language of the statute. He does allege that he received "an assortment of correspondence" from Defendant that were attempts to collect the debt in question, but he alleges no details regarding any of those communications, except for the dunning notice received on September 28, 2019. Without more, those allegations are not enough to plausibly show that the "principal purpose" of Defendant's business is to collect debts or that

---

[4] Plaintiff states in several other place throughout the Complaint that Defendant admitted to being a debt collector.

Defendant regularly collects or attempt to collect debts due to another. 15 U.S.C. § 1692a(6*). See, e.g., White v. Bank of Am., N.A.*, 597 Fed. Appx. 1015, 1020 (11th Cir. 2014) (unpublished decision) (finding that the plaintiffs' factual allegations did not plausibly show that the defendant violated the FDCPA where, among other deficiencies, the plaintiffs "alleged no facts, only a conclusory assertion that McCalla Raymer 'regularly attempt[ed] to collect debts' "); *Carter v. HSBC Mortg. Servs.*, No. 1:13-CV-3792-RWS-WEJ, 2016 U.S. Dist. LEXIS 56338, at *21 (N.D. Ga. Jan. 13, 2016) ("Plaintiff's unadorned legal conclusion that MC is a debt collector fails to meet the requirements of Iqbal and Twombly."), *adopted by* 2016 U.S. Dist. LEXIS 56119 (N.D. Ga. Feb. 17, 2016); *McFadden v. U.S. Bank, N.A.*, No. 8:14-cv-2068-T-35MAP, 2015 U.S. Dist. LEXIS 176462, at *14 (M.D. Fla. Oct. 7, 2015) (finding that "Plaintiff's conclusory allegation that Defendant U.S. Bank's principal purpose is the collection of debt falls far short of plausibly alleging facts establishing that the principal purpose of Defendant U.S. Bank's business is the collection of debts" because "an allegation simply parroting the terms of the statute will be found inadequate"); *Barber v. Rubin Lublin, LLC*, No. 1:13-CV-0975-TWT-AJB, 2013 U.S. Dist. LEXIS 179847, at *28-29 (N.D. Ga. Nov. 19, 2013) (finding that the plaintiff failed to adequately plead that the defendant was a debt collector where he "merely quotes the Act's definition of a debt collector and states that

Defendant is one" because "[s]uch an assertion is not only void of factual content but also a legal conclusion that the Court cannot consider"), *adopted by* 2013 U.S. Dist. LEXIS 179383 (N.D. Ga. Dec. 20, 2013); *Horton v. First Premier Bank*, No. 1:11-CV-03210-TWT-LTW, 2013 U.S. Dist. LEXIS 79105, at *22 (N.D. Ga. May 10, 2013) (finding that the plaintiff failed to adequately plead that any defendant was a debt collector under the FDCPA because "[r]eciting the statutory definition without offering any facts in support is insufficient to plausibly allege that Defendants qualify as debt collectors under the FDCPA"), *adopted by* 2013 U.S. Dist. LEXIS 78612 (N.D. Ga. June 4, 2013); *Anderson v. Deutsche Bank Nat'l Trust Co.*, No. 1:11-cv-4091-TWT-ECS, 2012 U.S. Dist. LEXIS 122130, at *12 (N.D. Ga. Aug. 6, 2012) ("Plaintiff's complaint does not contain sufficient factual allegations to allow a reasonable inference that Defendants are 'debt collectors' within the meaning of the FDCPA."), *adopted by* 2012 U.S. Dist. LEXIS 122127 (N.D. Ga. Aug. 27, 2012); *Mills v. JP Morgan Chase Bank*, No. 1:11–CV–3709–JEC–LTW, 2012 U.S. Dist. LEXIS 135752, at *28 (N.D. Ga. July 23, 2012) (recommending that plaintiffs' FDCPA claim be dismissed because they "fail[ed] to allege any specific facts indicating that Barrett Daffin regularly attempts to collect debts, that the principal purpose of its business is the collection of debts, or that the principal purpose of its business is the enforcement of security interests"), *adopted by* 2012

U.S. Dist. LEXIS 135750 (N.D. Ga. Aug. 14, 2012). Furthermore, Plaintiff's allegations that Defendant refers to itself as a debt collector in correspondence to him are irrelevant. *Fanello v. Bank of Am., NA*, 577 Fed. App'x 899, 902 (11th Cir. 2014) ("An entity cannot transform itself into a 'debt collector' within the meaning of the FDCPA simply by noting in a letter that it may be considered one under the Act.").

Plaintiff also attempts to allege that Defendant is a debt collector because it acquired his mortgage loan while it was in default. Plaintiff alleges that Defendant is a debt collector because, through its legal counsel, "PHD&J PLLLC", it attempted to "collect a debt which was obtained in default solely for the purpose of collecting on the alleged debt…." (*Id.* ¶ 16). Furthermore, Plaintiff alleges that Defendant acquired the debt from Residential, who acquired it from Deutsche Bank after it was in default "sometime after February 2013." (*Id.* ¶ 20). Plaintiff later states that "the Court should note that the alleged debt claimed by Defendant was in default when the security deed was assigned…." (*Id.* ¶ 42).

The FDCPA does not apply to mortgage servicers "collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). But that does not mean that

a mortgage servicer who is collecting a debt that was in default at the time it obtained the debt is a "debt collector" if the plaintiff fails to show that the definition of "debt collector" set forth in § 1692a is met, i.e., that the "principal purpose" of the creditor or servicer "is the collection of any debts" or "the enforcement of security interests," or that it "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owe or due another." 15 U.S.C. § 1692a(6). To the contrary, "[i]n contrast to the exclusion at § 1692a(6)(F)(iii), the statutory definition of 'debt collector' applies without regard to the default status of the underlying debt." *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1314 (11th Cir. 2015). In other words, Plaintiff argues that Defendant is a debt collector because the § 1692(a)(6)(F) exception does not apply to it, but Plaintiff failed to establish that Defendant met the statutory definition of a debt collector in the first place. Therefore, these allegations are insufficient to show that Defendant is a debt collector.

Even if Plaintiff had properly alleged that Defendant met the definition of a debt collector, his allegations do not show that Defendant acquired the mortgage loan while it was in default. Plaintiff's allegation that Defendant acquired the debt "after it was in default sometime after February 2013" (Doc. 1 ¶ 20) is insufficient to show that the debt was in default "at the time it was obtained" by Defendant. (Doc. 5-1 at 14 (citing *Hines v. MidFirst Bank*, No. 1:14-cv-00505-AT-AJB, 2014 U.S.

19

Dist. LEXIS 189295, at *38 (N.D. Ga. Nov. 26, 2014), *adopted by*, 2014 U.S. Dist. LEXIS 189292 (N.D. Ga. Dec. 22, 2014)). In *Hines*, this Court said that plaintiff did not sufficiently allege that defendant was a debt collector where she simply alleged that her loan was acquired by that defendant in "June 2010, after the Plaintiff had become delinquent on the loan." *Id.* Similarly, here, Plaintiff's vague allegation that Defendant acquired this loan sometime after it was in default is not specific enough for the Court to plausibly conclude that it was still in default *at the time* Defendant acquired it.

For the reasons above, Plaintiff does not sufficiently allege that Defendant is a debt collector under the FDCPA. Therefore, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's FDCPA claims be **GRANTED** and those claims be **DISMISSED**. However, out of an abundance of caution, the undersigned addresses each of Plaintiff's FDCPA claims below.

### c. <u>Whether Defendant Violated FDCPA</u>

In order to sufficiently plead his FDCPA claims, Plaintiff must point to facts demonstrating that Defendant "has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *Buckley*, 2010 U.S. Dist. LEXIS 10636 at *21. Plaintiff's Complaint alleges violations of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1695e(5), 1692e(8), 1692e(10), 1692g, and 1692i (Doc. 1 ¶ 60), as

well as § 1692j (*Id.* ¶ 61), and § 1692f (*Id.* ¶ 79).[5] Because "[e]ach of these subsections of the FDCPA has[] developed a specific body of law[,]" the undersigned analyzes whether Plaintiff states a claim under each section separately below. *Moore v. Seterus*, No. 15-0612-KD-M, 2016 U.S. Dist. LEXIS 174151, at *46 (S.D. Ala. Dec. 16, 2016). The undersigned finds that Plaintiff fails to state a claim under each section.

### i. § 1692f

Plaintiff alleges Defendant violated § 1692f by initiating foreclosure proceedings on the Property even though "Defendant here [] does not have standing to foreclose. (Doc. 1 ¶ 80). According to Plaintiff, while "a non-judicial foreclosure action generally does not constitute a 'debt collection activity' under the FDCPA," an exception to this rule existed for claims under 15 U.S.C. § 1692f(6). (*Id.* ¶ 81) (internal citations omitted). He also recites statutory language and case law regarding § 1692f in several places throughout the Complaint. (*Id.* ¶¶ 13, 41, 79-82). Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. It is a violation of that

---

[5] Plaintiff also alleges violations of § 1692k, but that subsection simply explains technical issues regarding liability under the FDCPA, such as calculation of damages, intent, and jurisdiction. 15 U.S.C. § 1692k. It does not create a separate cause of action.

section to "tak[e] or threaten[] to take any nonjudicial action to effect dispossession or disablement of property if-- (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest…." 15 U.S.C. § 1692f(6)(A). Defendant argues that this claim should be dismissed because "mere recitation of statutory language is not sufficient to state that [Defendant]…engaged in unfair or unconscionable collection practices…" and "Plaintiff fails to allege any facts to support his claims that the mortgage was not valid or that Defendant lacked authority to collect on the loan…." (Doc. 5-1 at 12). The Court agrees.

Plaintiff never specifically alleges how the means used by Defendant to collect the debt were "unfair or unconscionable." Furthermore, any allegation that Defendant violated § 1692f(6)(A) because it did not have standing to initiate a non-judicial foreclosure sale on the Property fails. As this Court explained to Plaintiff in *Pignato I*:

> Under Georgia law, "the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed." *You v. J.P. Morgan Chase Bank, N.A.*, 293 Ga. 67, 74 (2013). Deutsche Bank has the right to foreclose because it had such authority as the assignee of the security deed. In addition, Georgia law allows Deutsche Bank to appoint defendant to act on its behalf. *Stubbs v. Bank of America*, 844 F. Supp. 2d 1267, 1271 (2012) (holding that "it [is] of no consequence who actually sends the notice [of foreclosure], and that task may properly be delegated to a servicing agent").

22

*Pignato I*, Doc. 10 at 4, Doc. 15 at 14. *See also Carr v. U.S. Bank NA*, Civil Action File 1:11-CV-00821-SCJ-GGB, 2011 U.S. Dist. LEXIS 160713, at *27 (N.D. Ga. Oct. 27, 2011) (finding that the plaintiff "failed to allege sufficient facts from which the court may infer that the subject Security Deed is void and that U.S. Bank had no present right of possession"), *adopted by* 2012 U.S. Dist. LEXIS 195170 (N.D. Ga. Jan. 17, 2012). Plaintiff does not "specifically identify how [any other alleged conduct] was [] unfair or unconscionable." *Taylor v. Heath W. Williams, L.L.C.*, 510 F. Supp. 2d 1206, 1217 (N.D. Ga. Feb. 23, 2007) (dismissing § 1692f claim for lack of factual support). His recitations of statutory language and case law are insufficient to establish a claim. Therefore, his § 1692f claim should be dismissed.

   ii. **§ 1692g**

   Plaintiff also alleges Defendant violated § 1692g when it "refused to validate the alleged debt" after he sent Defendant a QWR letter on February 26, 2013 and an undated "notice of verification" seeking information about the debt. (Doc. 1 ¶¶ 62-63, 65). Plaintiff also alleges that Defendant failed to provide "any accounting or financial records…necessary to prove the breakdown of the purported 'total' amount alleged to be owed…." (*Id.* ¶ 55). Section 1692g(b) "provides that, if a consumer notifies a debt collector within 30 days of receipt of an initial communication regarding collection of a debt that the debt is disputed, the debt collector must 'cease

collection of the debt' until it 'obtains verification of the debt, or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.'" *Anderson v. Frederick J. Hanna & Assocs.*, 361 F. Supp. 2d 1379, 1383 (N.D. Ga. 2005). "Verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed." *Id.* (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999)). Defendant moves to dismiss this § 1692g claim because "Plaintiff admits [Defendant] sent him notice of the amount it was attempting to collect on behalf of Deutsche Bank in January 2019 and fails to allege that he disputed this debt within 30 days of receiving the notice." (Doc. 5-1 at 9 (citing Doc. 1 ¶¶ 15, 44, 55)). Defendant also points out that Plaintiff alleges he sent notices of dispute in 2012 and 2013, before Defendant allegedly acquired the loan, which would make § 1692g inapplicable. (Doc. 5-1 at 9-10).

As to Defendant's first argument, Plaintiff did not admit that Defendant sent him notice of the amount of the debt it was attempting to collect. The paragraphs cited by Defendant indicate that Plaintiff received a dunning notice from Defendant's attorney on September 28, 2019, that the dunning notice stated the debt was owed to Deutsche Bank, and that Defendant has not verified or produced

accounting or financial records proving the breakdown of the purported total amount alleged to be owed. (Doc. 1 ¶¶ 15, 44, 55). Those paragraphs do not allege Defendant ever told Plaintiff the amount it was trying to collect.

However, Defendant's second argument is meritorious, because Plaintiff does not properly allege that any of the letters he sent to Defendant created liability under § 1692g. First, it is not clear that Plaintiff's QWR letter, allegedly sent to Defendant on February 26, 2013, actually disputed the debt in question. (*See* Doc. 1-2). That letter requests information from Defendant, but it does not ever clearly dispute the validity of the debt or seek validation. (*Id.*). Assuming the QWR letter properly disputed the debt, it still would not create liability for Defendant because of when it was sent. Section 1692g(a) requires debt collectors to send written notice of a debt to a consumer within five days of the debt collector's initial communication with the consumer regarding that debt. 15 U.S.C. § 1692g(a). If the consumer disputes the debt within thirty days of the consumer's receipt of the written notice required in § 1692g(a), then the debt collector must respond. Plaintiff does not allege when Defendant initially communicated with him regarding the debt, when or if Defendant sent the written notice required by § 1692g(a), or that his QWR letter was sent within thirty days of his receipt of such written notice. (*See* Doc. 1). In fact, the QWR letter is dated February 26, 2013, but Plaintiff alleges that Defendant did not acquire the

debt from Deutsche Bank until "sometime after February 2013." The Court will not assume that Defendant was sending communications to Plaintiff regarding the debt before it ever "acquired" the debt, and Plaintiff does not allege that to be the case. Therefore, the allegations regarding Plaintiff's QWR letter do not state a claim under § 1692g. Secondly, the "Fraudulent Conversion Letter" Plaintiff sent to Deutsche Bank on April 12, 2012 does not create liability for Defendant under § 1692g(b), because Plaintiff's allegations do not show that Defendant had anything to do with that letter. It was sent to a different entity approximately a year before Defendant "acquired" the loan. (Doc. 1 ¶ 20; *see* Doc. 1-1). Thirdly, Plaintiff's "registered certified notice of verification" does not create liability for Defendant under § 1692g(b), because Plaintiff alleges no specific facts about its contents or when it was sent. (Doc. 1 ¶ 65). The Court cannot piece together a timeline regarding how that notice relates to any of Defendant's communications to Plaintiff. Finally, Plaintiff's "Request for Validation of Disputed Debt", attached to his Complaint, does not create liability for Defendant under § 1692g(b). That document disputes the debt in question, but it was filed with Plaintiff's Complaint on November 12, 2019 and bore the same date. (Doc. 1 at 38-39). Assuming the dunning notice Plaintiff received on September 28, 2019 was Defendant's written notice of the debt, sent pursuant to § 1692g(a), then the dispute dated November 12, 2019 would have been received by

Defendant more than thirty days after Plaintiff's receipt of the dunning notice. Therefore, the dispute would not be capable of creating liability under § 1692g(b).

In sum, none of Plaintiff's alleged disputes were sent to Defendant in time to create an obligation for Defendant to validate the debt. Thus, Plaintiff's Complaint fails to state a claim under § 1692g.

### iii. <u>§ 1692d</u>

Next, Plaintiff alleges Defendant violated § 1692d "because it has engaged in conduct of which the natural consequences…is to harass, oppress, or abuse Plaintiff in connection with the alleged attempt to collect on this debt and foreclosure of Plaintiff's property." (Doc. 1 ¶ 52). He later states Defendant violated § 1692d "by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff by, without limitation; Continuing to pursue collection of disputed and unverified debt; foreclosing on Plaintiff's property to sell it; [and] forcing Plaintiff to defend against an invalid action[.]" (*Id.* ¶ 75). Plaintiff also states, "In their correspondence letters _____ misrepresents and harasses Plaintiff and attempts to intimidate him into paying for an alleged debt in which he does not know who the servicer is." (*Id.* ¶ 57).

Section 1692d states "[a] debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in

27

connection with the collection of a debt." 15 U.S.C. § 1692d. Defendant moves to dismiss this claim, because "Plaintiff fails to allege any facts to support his claims that the mortgage was not valid or that [Defendant] lacked authority to collect on the loan…." (Doc. 5-1 at 12).

Plaintiff's § 1692d claim should be dismissed, because he does not allege specific facts to support his broad claims. Instead, he simply parrots statutory language. He does not allege specific facts detailing Defendant's conduct that was harassing, oppressive, or abusive. (*See* Doc. 5-1). He does allege that Defendant violated § 1692d by "[c]ontinuing to pursue collection of disputed and unverified debt; foreclosing on Plaintiff's property to sell it, [and] forcing Plaintiff to defend against an invalid action." However, as explained above in the discussion of Plaintiff's § 1692g claim, Plaintiff did not properly dispute this debt to Defendant, so Defendant did not have an obligation to validate the debt. Moreover, as explained above in the discussion of Plaintiff's § 1692f claim, Defendant had a right to foreclose on this Property. Thus, Plaintiff did not have to "defend against an invalid action." None of those allegations establish a claim for harassment, oppression, or abuse under § 1692d. As explained in *Pignato I*, the Eleventh Circuit has held that claims under § 1692d require a showing of coercion or a "tone . . . of intimidation." *See Jeter v. Credit Bureau*, 760 F.2d 1168, 1179 (11th Cir. 1985) (finding that debt

28

collector's conduct, which included correspondence threatening legal action and warning of "embarrassment, inconvenience, and further expense" and demanding payment within five days, did not state a claim under § 1692d); *see also Beeders v. Gulf Coast Collection Bureau*, 796 F. Supp. 2d 1335, 1339 (M.D. Fla. Jan. 12, 2011), (finding that the debt collector's repeated telephone calls attempting to collect debt did not violate § 1692d), *aff'd Beeders v. Gulf Coast Collection Bureau, Inc.*, 432 Fed. Appx. 918 (11th Cir. 2011). Plaintiff alleges that someone harassed him and attempted to intimidate him into paying the debt in this case, but that allegation contains a blank space where the name of the alleged harasser should be located. (*See* Doc. 1 ¶ 57). Even if Plaintiff directed that allegation against Defendant specifically, he does not indicate how the alleged conduct was intimidating. *Pignato I*, Doc. 15 at 13 n.2. These allegations are insufficient to state a claim under § 1692d. Thus, this claim should be dismissed.

### iv.  <u>§ 1692e</u>

Plaintiff's Complaint alleges several violations of § 1692e, including specific violations of subsections 1692e(2)(A), e(5), e(8), and e(10). (Doc. 1 ¶¶ 49, 53-54, 60, 78, 82, 84). "Section 1692e of the FDCPA prohibits debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193

(11th Cir. 2010) (quoting 15 U.S.C. § 1692e). The Eleventh Circuit "employ[s] the 'least-sophisticated consumer' standard to evaluate whether a debt collector's communication violates § 1692e[.]'" *Id.* (quoting *Jeter*, 760F.2d at 1177). The section includes a non-exhaustive list of prohibited conduct. *See* 15 U.S.C. § 1692e(1)-(16). Plaintiff claims that Defendant's conduct violated several of these subsections.

As an initial matter, Plaintiff's broad allegations that Defendant violated the § 1692e prohibition on "false, deceptive and misleading representations" fail to state a claim. (Doc. 1 ¶¶ 49-51, 61). As explained in *Pignato I*, "Plaintiff does not support those quotations with anything beyond 'unadorned, the-defendant-unlawfully-harmed-me accusation[s].'" *Pignato I*, Doc. 15 at 15-16 (quoting *Iqbal*, 556 U.S. at 678). "Under Rule 8's pleading standards, those types of allegations are insufficient to demonstrate that Defendant plausibly violated the Act." *Pignato I*, Doc. 15 at 16 (citations omitted).

### v. §§ 1692e(2)(a) and § 1692e(10)

Next, the Court addresses Plaintiff's allegations under §§ 1692e(2)(a) and 1692e(10) together, because they are similar. Section 1692e(2)(a) prohibits the "false representation of-- (A) the character, amount, or legal status of any debt[.]" 15 U.S.C. § 1692e(2)(a). Section 1692e(10) prohibits "[t]he use of any false

representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). Plaintiff alleges that Defendant violated both of those subsections by "falsely representing that Defendant is either an assignee of an original creditor, and/or that said alleged assignment constitutes a proper, competent, or valid assignment between Defendant and the original creditor of any alleged debt by any alleged original creditor to Defendant, and/or that Defendant is the original creditor." (Doc. 1 ¶ 82). Plaintiff later reiterates those allegations, claiming Defendant: "wrongfully state[s] that their [sic] actions are that of a creditor. Plaintiff is very confused by who they are especially[] because he has no records of ever signing any sort of contract with the Defendant, and they have failed numerous times to clearly identify themselves as requested[.]" (*Id.* ¶ 68).

Defendant argues these allegations fail to state a claim for several reasons. Firstly, "Plaintiff's vague allegations that [Defendant] represented itself to be an assignee is directly contradicted by his specific allegations that [Defendant] identified itself as the loan servicer in the dunning letter and Notice of Sale." (Doc. 5-1 at 10 (citing Doc. 1 ¶¶ 31, 44, 121; Doc. 1-3)). Plaintiff does allege that Defendant identified itself several times as a loan servicer (Doc. 1 ¶¶ 31, 121; Doc. 1-3), and Plaintiff also alleges that Defendant identified Deutsche Bank as the party

to whom the debt is owed (*Id.* ¶ 44). Furthermore, Plaintiff's own alleged communications, attached to his Complaint, demonstrate that he was not confused about Defendant's identity. A letter Plaintiff sent to Deutsche Bank on April 12, 2012 demonstrates that Plaintiff recognized Deutsche Bank as the entity to whom his loan was owed (Doc 1-1 at 2), and a letter he allegedly sent to Defendant on February 26, 2013 demonstrates that he understood Defendant to be his loan servicer (Doc. 1-2 at 1). Furthermore, the "Notice of Sale under Power" clearly states that Deutsche Bank was the most recent transferee of the Security Deed and that Defendant had authority to "negotiate, amend, and modify" the terms of the loan. (Doc. 1-3). Those communications indicate that Defendant did not misrepresent itself to Plaintiff, as he generally alleged, and that Plaintiff was not confused about the identities of Defendant or Deutsche Bank. Thus, claims under §§ 1692e(2)(a) and e(10) based on those allegations must fail.

Secondly, Defendant argues that Plaintiff does not have standing to challenge the validity of any assignment of the Security Deed, because he is not a party to the agreement. (Doc. 5-1 at 11-12). That is true as well. Under Georgia law, borrowers do not have standing to attack the validity of an assignment of their security deed. *Haynes v. McCalla Raymer LLC*, 793 F.3d 1246, 1252 (11th Cir. 2015). Courts have specifically rejected claims based on allegations that an assignment was robo-signed,

as Plaintiff alleges here (Doc. 1 ¶ 61). *See Stone v. Ameriquest Mortg. Co.*, No. 2:15-cv-109-RWS-JCF, 2016 WL 4595945, at *1 (N.D. Ga. Apr. 27, 2016) (noting that "[c]ourts have repeatedly rejected similar contentions based on the alleged 'robo-signing' of assignments"); *Hines v. MidFirst Bank*, No. 1:12-cv-2527-TWT-JSA, 2013 U.S. Dist. LEXIS 23089, at *2 (N.D. Ga. Jan. 8, 2013) (noting that the plaintiff's claims, including a claim based on "robo-signing" of assignment, "have been rejected numerous times before and should be rejected again in this case"), *adopted by*, 2013 U.S. Dist. LEXIS 21828 (N.D. Ga. Feb. 15, 2013). Thus, any attempt at pleading a claim based on an invalid assignment to Defendant or Deutsche Bank should fail.

For those reasons, Plaintiff cannot establish a claim under §§ 1692e(2)(a) or e(10).

### vi.  **§ 1692e(5)**

Section 1692e(5) provides it is a violation of that section to "threat[en] to take any action that cannot legally be taken or that is not intended to be taken" in connection with the collection of a debt. 15 U.S.C. § 1692e(5). Plaintiff alleges that Defendant violated this subsection (Doc. 1 ¶¶ 60, 82), but does not clearly explain how. As far as the undersigned can tell, Plaintiff's claim under this subsection seems to be based on Defendant's initiation of a non-judicial foreclosure on the Property,

as evidenced by the Notice of Sale Under Power, which scheduled a non-judicial foreclosure sale for December 3, 2019. (Doc. 1-3). This claim is premised on Plaintiff's assertions that Defendant cannot legally initiate a non-judicial foreclosure. However, as this Court explained in *Pignato I*, and as Defendant argues in its motion (Doc. 5-1 at 10-11), Defendant has the authority to execute a non-judicial foreclosure sale on behalf of Deutsche Bank as the loan servicer. *Pignato I*, Doc. 15 at 22 (quoting *Pignato I*, Doc. 10 at 4) ("Deutsche Bank has the right to foreclose because it had such authority as the assignee of the security deed. In addition, Georgia law allowed Deutsche Bank to appoint Defendant to act on its behalf."). Therefore, Defendant's initiation of a non-judicial foreclosure sale of the Property does not violate § 1692e(5), and this claim should be dismissed.

### vii. § 1692e(8)

Plaintiff also alleges that Defendant violated § 1692e(8) when he:

> [C]ommunicated credit information to persons, including but not limited to credit reporting bureaus or agencies, with respect to the Plaintiff.

> Information, which Defendant and Defendant's legal counsel knew or should have known to be false — including without limitation allegations that Plaintiff owed the purported debt which is the subject of this action, and/or that Plaintiff owes said debt to Defendant and/or that Defendant is the original creditor of said alleged debt.

> Upon information and belief, Defendant is in violations of FDCPA 15 U.S.C. § 1692e(8), because Defendant failed to communicate to

Plaintiff, other persons and entities, including credit bureaus, and persons yet to be determined, that Plaintiff has disputed the alleged debt.

(Doc. 1 ¶¶ 76-78). He also alleges that Defendant violated this subsection by:

[C]ommunicat[ing] to the Plaintiff and other persons credit information which is known or which should be known to be false, including the above [falsely representing that Defendant is either an assignee of an original creditor, and/or that said alleged assignment constitutes a proper, competent, or valid assignment between Defendant, and/or that Defendant is the original creditor], the failure to communicate that a disputed debt is disputed, the "re-aging" of said debt, the false and misleading representation and impression that the Defendant is the original creditor of said debt, and other material false and misleading representations[.]

[R]eporting that Plaintiff had an account, and with Defendant reporting this to credit bureaus this was misleading information regarding the nature and/or status of said alleged debt with respect to such matters as the identity of the original creditor, the relevant dates and ages of said alleged debt, and other matters which Defendant knew or should have known would mislead[.]

(Doc. 1 ¶¶ 82, 84). This subsection prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

Defendant argues that Plaintiff fails to state a claim under this subsection because he fails to allege that he ever disputed the debt directly with Defendant. (Doc. 5-1 at 10). Defendant is correct. Plaintiff's QWR letter allegedly sent to

Defendant in February 2013 does not dispute the debt in question, but simply demands information about the debt. (Doc. 1-2). The letter sent to Deutsche Bank in April 2012 does dispute the debt, but this letter was not sent to Defendant. (Doc. 1-1). The undersigned does not know what Plaintiff requested in the "registered certified notice of verification" he allegedly sent Defendant. (Doc. 1 ¶ 65). Plaintiff attached a "Request for Validation of Disputed Debt" to his Complaint, but Defendant has not had an opportunity to report that dispute to any other person, so Plaintiff's claim cannot be based on that dispute. (*Id.* at 38-39). Thus, Plaintiff does not state a claim based on Defendant's alleged failure to report a dispute of this debt to another person.

Furthermore, none of Plaintiff's other allegations establish a claim under this subsection. It would not be false for Defendant to report that Plaintiff owed this debt, and Plaintiff never alleges that he does not owe this debt. Additionally, any claim based on an allegation that Defendant falsely reported to be the assignee of the original creditor or that such an assignment was improper must fail, because, "as this Court has established, any allegation of falsity based on Defendant's lack of authority to foreclose will not be considered because that premise is without merit." *Pignato I*, Doc. 15 at 23 (citing *Pignato I*, Doc. 10 at 3)). As explained above in the

discussion of Plaintiff's §§ 1692e(2) and e(10) claims, he does not have standing to challenge any assignment of the Security Deed.

Lastly, each of Plaintiff's attempts to plead claims under this subsection should be dismissed because he does not allege "specific factual conduct that would demonstrate a violation, such as to whom Defendant is supposed to have communicated Plaintiff's credit information or why Defendant knew, or should have known, that the information was false." *Pignato I*, Doc. 15 at 22-23. "Merely alleging that Defendant sent his information to a credit bureau is insufficient to state a claim, as 'debt collectors may communicate with credit agencies so long as they are not otherwise acting unlawfully.'" *Id.* at 23 (citing *Carey v. Pinnacle Credit Servs., LLC*, Case No. 6:13-cv-426-Orl-37TBS, 2014 U.S. Dist. LEXIS 1413, at *3 (M.D. Fla. Jan. 7, 2014) (citing *Acosta v. Campbell*, No. 6:04-cv-761-Orl-28DAB, 2006 U.S. Dist. LEXIS 4088 (M.D. Fla. Jan. 18, 2006))). Plaintiff's allegations that Defendant communicated information to "other persons and entities" and "persons yet to be determined" (Doc. 1 ¶ 78) do not establish a claim, because "he provides no indication of who these people are, making it impossible for the Court to determine whether his allegation states a claim." *Pignato I*, Doc. 15 at 23.

For those reasons, Plaintiff fails to allege conduct that plausibly demonstrates a violation of § 1692e(8). *See Evans v. Better Homes & Gardens Real Estate, LLC*,

Civil Action No. 1:13-CV-1192-CC-ECS, 2013 U.S. Dist. LEXIS 192227, at *10-11 (N.D. Ga. Nov. 7, 2013) (dismissing complaint whose claims simply quoted "case law and statutes without explaining how they apply to the facts alleged"), *adopted by* 2013 U.S. Dist. LEXIS 192225 (N.D. Ga. Dec. 13, 2013); *see also Budhi v. BAC Home Loans Servicing, LP*, Civil Action File No. 1:11-CV-2785-TWT-AJB, 2012 U.S. Dist. LEXIS 67030, at *19 (N.D. Ga. Apr. 16, 2012) (dismissing the plaintiff's § 1692e(8) claim for failing to point to factual conduct showing that the lender communicated false credit information), *adopted by* 2012 U.S. Dist. LEXIS 66808 (N.D. Ga. May 11, 2012).

viii. **§ 1692i**

Plaintiff alleges Defendant violated § 1692i of the FDCPA by initiating an "unlawful, fraudulent non-judicial foreclosure" as a debt collector. (Doc. 1 ¶ 27, 64). According to Plaintiff, § 1692i mandates that debt collectors can only initiate judicial foreclosures, and only to obtain monetary compensation, not possession of real property. (*Id.* ¶ 26). Defendant moved to dismiss this claim. (Doc. 5-1 at 8-9). Section 1692i provides that a "debt collector who brings any legal action on a debt against any consumer shall[,] in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district . . . in which such real property is located." 15 U.S.C. § 1692i(a). As this

38

Court explained to Plaintiff in *Pignato I*, § 1692i does not require debt collectors to foreclose through judicial proceedings. Instead, its purpose is to dictate the venue in which a debt collector may bring legal action against a consumer. *Pignato I*, Doc. 15 at 28; *see Sobers*, 2016 U.S. Dist. LEXIS 183433, at *11-12 (holding that § 1692i does not "prohibit a debt collector from enforcing a security deed through non-judicial foreclosure"). Therefore, Plaintiff's § 1692i claim should be dismissed.

### ix. § 1692j

Plaintiff also alleges that Defendant violated § 1692j:

> "as Plaintiff believed they were acting on behalf of the actual creditor, however, in reality they were engaging in conduct of which the natural consequence was to harass, oppress, or abuse Plaintiff in connection with the collection of a debt; and they also use false, deceptive, or misleading representations or means in connection with the collection of a debt; supported by the unauthenticated robo-signed assignment; and thus violated the FDCPA."

(Doc. 1 ¶ 61). Section 1692j provides:

> It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

15 U.S.C. § 1692j(a). This Court has clarified the conduct prohibited by § 1692j:

> The conduct prohibited in § 1692j is known as 'flat rating,' which is explained as follows: "A 'flat-rater' is one who sells to creditors a set of dunning letters bearing the letter-head of the flat-rater's collection agency and exhorting the debtor to pay the creditor at once. The creditor

> sends these letters to his debtors, giving the impression that a third party
> debt collector is collecting the debt. In fact, however, the flat-rater is
> not in the business of debt collection[.]"

*Sobers v. Caliber Home Loans, Inc.*, No. 1:16-cv-335-WSD-JKL, 2016 U.S. Dist. LEXIS 183433, at *7-8 (N.D. Ga. July 27, 2016) (quoting *Anthes v. Transworld Sys., Inc.*, 765 F. Supp. 162, 167-68 (D. Del. 1991)), *adopted by* 2017 U.S. Dist. LEXIS 14398 (N.D. Ga. Feb. 2, 2017). Defendant moves to dismiss Plaintiff's § 1692j claim, because "mere recitation of statutory language is not sufficient to state that PHH made any false or misleading representations or engaged in unfair or unconscionable collection practices under 15 U.S.C. §§ 1692e, 1692f, 1692j." (Doc. 5-1 at 12 (citing *Sobers*, 2016 U.S. Dist. LEXIS 183433, at *14)).

Here, Plaintiff has not alleged that Defendant "designed, compiled, and furnished a false form" to engineer the perception that another person, other than the creditor or Defendant, is attempting to collect the debt. *Sobers*, 2016 U.S. Dist. LEXIS 183433, at *8. And Plaintiff's general allegations of fraud do not allege the specific conduct necessary for a violation under this subsection. Accordingly, Plaintiff has not alleged conduct demonstrative of a violation of § 1692j. *See id.* at *8-9 (dismissing § 1692j allegations for failing to allege the factual conduct necessary for a violation of that subsection); *Hayes v. Bank of N.Y. Mellon*, No. 1:12-

cv-2601-TWT-LTW, 2013 U.S. Dist. LEXIS 17683, at *3 (N.D. Ga. Jan. 18, 2013) (same), *adopted by* 2013 U.S. Dist. LEXIS 17202 (N.D. Ga. Feb. 8, 2013).

In sum, Plaintiff fails to allege that Defendant violated any section of the FDCPA. For those reasons, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's FDCPA claims be **GRANTED** and those claims be **DISMISSED**.

## IV.  FCRA Claims

Plaintiff's second cause of action is for an alleged violation of the FCRA, 15 U.S.C. § 1681 et seq. Plaintiff claims Defendant violated the FCRA when it "obtained Plaintiff's consumer credit report and made an inquiry on his report…by misrepresenting to the credit bureaus that they had the right to run Plaintiff's credit" in violation of 15 U.S.C. § 1681q. (Doc. 1 ¶ 95). Plaintiff also alleges Defendant violated § 1681b(c) by "obtaining credit information without a 'permissible purpose'" and without Plaintiff's permission. (*Id.* ¶ 97). Lastly, Plaintiff alleges Defendant "misrepresented the status of the account with the original lender…." (*Id.* ¶ 98). Each of these allegations fail to establish a claim for the reasons below.

Firstly, § 1692q is a criminal offense that imposes penalties on "[a]ny person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses." 15 U.S.C. § 1681q. There is no private

cause of action under this subsection, and Plaintiff is therefore barred from bringing

an action under this provision. *Pignato I*, Doc. 6 at 20 n.4 (citing *Caselli v. PHH*

*Mortg. Corp.*, No. 1:11-CV-2418-RWS, 2012 U.S. Dist. LEXIS 4949, at *18 (N.D.

Ga. Jan. 13, 2012).

Secondly, Plaintiff does not state a claim under § 1681b(c) for obtaining his

credit information without a permissible purpose. Section 1681b(a) provides that

"any consumer reporting agency may furnish a consumer report" only under certain

enumerated circumstances. A few of those permissible purposes include provision

of consumer reports to a person the reporting agency has reason to believe: "intends

to use the information in connection with a credit transaction involving the consumer

on whom the information is to be furnished and involving the extension of credit to,

*or review or collection of an account of*, the consumer"  15 U.S.C. § 1681b(a)(3)(A)

(emphasis added); "intends to use the information, as a potential investor or servicer,

or current insurer, in connection with a valuation of, or an assessment of the credit

or prepayment risks associated with, an existing credit obligation"  15 U.S.C. §

1681b(a)(3)(E); or who "otherwise has a legitimate business need for the

information -- . . . (ii) to review an account to determine whether the consumer

continues to meet the terms of the account." 15 U.S.C. § 1681b(a)(3)(F)(ii). Section

1681b(c) says that a consumer reporting agency may only furnish a consumer report

related to a consumer pursuant to § 1681b(a)(3)(A) or (C) in connection with any credit or insurance transaction *that is not initiated by the consumer* if, among other things, "the consumer authorizes the agency to provide such report to such person; or…the transaction consists of a firm offer of credit or insurance[.]" 15 U.S.C. § 1681b(c)(1)(A) and (B).

Defendant argues that, assuming it obtained Plaintiff's credit report, it had a permissible purpose for doing so. Defendant points out that Plaintiff's "entire Complaint is premised on the idea that [Defendant] is attempting to collect on Plaintiff's mortgage as loan servicer." (Doc. 5-1 at 16). Therefore, if it obtained his credit report, it would have been for the permissible purpose of the "review or collection of an account…." (*Id.* at 16-17 (citing 15 U.S.C. § 1681b(a)(3)(A)). The Court agrees. It has been established that Plaintiff's Complaint and accompanying exhibits allege that Defendant was acting as a loan servicer to Plaintiff's mortgage, on behalf of Deutsche Bank and was attempting to collect payments on his mortgage. As Plaintiff's loan servicer, it was permissible for Defendant to obtain Plaintiff's credit report to use that information in connection with the collection or review of his mortgage, pursuant to 15 U.S.C. § 1681b(a)(3)(a). Defendant could have also conceivably obtained Plaintiff's credit report for the permissible purposes of using the information "in connection with a valuation of, or an assessment of the credit or

43

prepayment risks associated with, an existing credit obligation," 15 U.S.C. § 1681b(a)(3)(E), or "to review an account to determine whether the consumer continues to meet the terms of the account," 15 U.S.C. § 1681b(a)(3)(F)(ii). *Pignato I*, Doc. 6 at 22-23; *see also Pritchett v. Ocwen Loan Servicing, LLC*, 2:18-cv-00217-RWS-JCF, 2019 WL 2323629, at *7 (Apr. 11, 2019 N.D. Ga.) (holding that the same exact FCRA allegations did not establish a claim because the defendant loan servicer there had a permissible purpose for obtaining the plaintiff's credit report pursuant to § 1681b(a)(3)(F)), *adopted by*, 2019 WL 232609 (May 24, 2019 N.D. Ga.) "Thus, Plaintiff has not alleged facts that plausibly demonstrate that Defendant did not have a permissible purpose for obtaining his credit information." *Pritchett*, 2019 WL 2323629, at *7. Furthermore, Plaintiff does not allege facts such as how, when, and from whom Defendant obtained his credit report, or that he did not initiate his mortgage transaction. (*See* Doc. 1). Therefore, he has not alleged facts that plausibly demonstrate that § 1681b(c) applies.

Thirdly, it is unclear which provision of the FCRA Plaintiff is relying on to state a claim when he alleges Defendant "misrepresented the status of the account with the original lender[.]" (Doc. 1 ¶ 98). Plaintiff supports that allegation by stating a credit report indicates that his account with the original lender has been paid, "which leads Plaintiff to question Defendant's feeble attempt to validate the alleged

debt they claim to be owed to them by Plaintiff." (*Id.*). Even assuming Plaintiff's credit report shows that his original lender has been paid, Plaintiff does not allege facts to show that he was the person who paid EverBank or that he does not still owe the loan. In fact, Plaintiff alleges he was in default on this loan as recently as September 2019. (*Id.* ¶ 15). Thus, the Court does not understand how this allegation states a claim of wrongdoing by Defendant. To the extent Plaintiff is alleging that Defendant furnished inaccurate information to credit agencies, he also fails to state a claim. Plaintiff cannot bring a private cause of action under § 1681s-2(a), which governs a furnisher's duty to provide accurate information to credit agencies. *See Chipka v. Bank of Am.*, 355 Fed. App'x 380, 383 (11th Cir. 2009). Section 1681s-2(b) "requires furnishers to investigate and respond promptly to notices of customer disputes." *Turner v. Wells Fargo Dealer Servs.*, No. 1:17-cv-01257-TCB-CMS, 2017 WL 8220605, at *4 (N.D. Ga. Oct. 23, 2017) (citing *Green v. RBS Nat'l Bank*, 288 Fed. App'x 641, 642 (11th Cir. 2008)), *adopted by* 2017 WL 8222344 (N.D. Ga. Nov. 13, 2017). Section 1681s-2(b) "does provide consumers with a private right of action . . . but only if the furnisher received notice of the consumer's dispute from a CRA." *Turner*, 2017 WL 8220605, at *4 (citing *Green*, 288 Fed. App'x at 642). "A furnisher's duties under the statute are not triggered, however, until after a furnisher receives notice from a CRA of a consumer's dispute with regard to the

completeness or accuracy of the information in a consumer's credit report." *Turner*, 2017 WL 8220605, at *4 (citing 15 U.S.C. § 1681s-2(b)). Plaintiff does not allege that he disputed the accuracy of information furnished by Defendant with a credit agency or that a credit agency then notified Defendant of any such dispute. (*See* Doc. 1). Therefore, Plaintiff's allegations regarding Defendant mispresenting the status of his loan with the original lender do not state a claim.

For those reasons, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's FCRA claims be **GRANTED** and those claims be **DISMISSED**.

## V.   Negligence Claim

Plaintiff's third count is for negligence under Georgia law. Plaintiff asserts that "Defendant has a duty to exercise reasonable care and skill to maintain proper and accurate records" which it violated by "foreclosing on Plaintiff's property then selling it when it does not have the legal authority and proper documentation to do so." (Doc. 1 ¶ 105). Plaintiff also alleges Defendant "negligently failed to comply with the requirements of the FCRA" by "failing to conduct a reasonable investigation and correction of false information in response to Plaintiff's credit reporting dispute." (*Id.* ¶ 106).  Defendant argues that Plaintiff's negligence claim fails because (1) Plaintiff admits elsewhere that Defendant has the authority to foreclose on the Property and (2) Plaintiff's attempt to bring a state law negligence

claim for incorrect credit reporting is preempted by § 1681t(b)(1)(F) of the FCRA. (Doc. 5-1 at 19-20). The Court agrees.

As explained several times throughout this report and recommendation, Defendant's status as the servicer for Plaintiff's mortgage gives it the authority to initiate a non-judicial foreclosure on the Property. *Pignato I*, Doc. 10 at 4. Therefore, Defendant had authority to initiate foreclosure on the Property, and Plaintiff's state-law negligence claim based on wrongful foreclosure fails. Additionally, § 1681t(b)(1)(F) preempts a claim where "(1) the legal duty giving rise to the claim is imposed by state law, and (2) the claim is based on conduct regulated by § 1681s-2." *Granville Alley v. Farmers Bank, Inc.*, No. 3:13-CV-146 (CAR), 2014 WL 4287103, at *7 (M.D. Ga. Aug. 29, 2014). Here, Plaintiff is bringing a state negligence claim that is based on conduct regulated by § 1681s-2, the investigation of information on a credit report that a consumer has disputed. (Doc. 1 ¶ 106); 15 U.S.C. § 1681s-2(b). Thus, the FCRA preempts this negligence claim. Even if the FCRA did not preempt this negligence claim, as explained in the discussion of Plaintiff's FCRA claims above, Plaintiff has not pled specific facts to plausibly show how Defendant violated that § 1681s-2(b).

For those reasons, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's negligence claim be **GRANTED** and that claim be **DISMISSED**.

47

## VI.  IIED Claim

Plaintiff's next claim is for IIED under Georgia law. Plaintiff alleges
Defendant's acts and/or omissions in this case were done intentionally and/or with
gross indifference to his rights, and that he suffered emotional distress, including
extreme humiliation, anxiety, and loss of sleep, as a result of Defendant's conduct.
(Doc. 1 ¶¶ 110-11). He also alleges "Defendant acted with malice, fraud, [and]
oppression by attempting to take Plaintiff's real property through foreclosure when
they have no right to do so…." (*Id.* ¶ 111). To prevail on IIED claim, a plaintiff must
show: (1) the conduct was intentional or reckless; (2) the conduct was extreme and
outrageous; (3) there is a causal connection between the wrongful conduct and the
emotional distress; and (4) the emotional distress is severe.  *See Hendrix v. Phillips*,
207 Ga. App. 394, 395, 428 S.E.2d 91 (Ga. Ct. App. 1993). Georgia courts have
found liability for IIED "only where the conduct has been so outrageous in character,
and so extreme in degree, as to go beyond all possible bounds of decency, and to be
regarded as atrocious, and utterly intolerable in a civilized community." *Yarbrough
v. SAS Sys., Inc.*, 204 Ga. App. 428, 429, 419 S.E.2d 507 (Ga. Ct. App. 1992). "The
burden on a plaintiff asserting a claim for [IIED] is heavy." *Durley v. APAC, Inc.*,
236 F.3d 651, 658 (11th Cir. 2000). Defendant argues that this claim should be
dismissed because Plaintiff fails to allege facts that support "extreme and

48

outrageous" conduct and Defendant had a right to foreclose on the Property. (Doc. 5-1 at 20-21). The Court agrees.

Plaintiff's IIED claim is nothing more than a "[t]hreadbare recital of the elements of a cause of action, supported by mere conclusory statements …." *Iqbal*, 556 U.S. at 678. Plaintiff's allegations are insufficient to establish a claim for IIED, because they do not contain any specific conduct that would rise to the level of "extreme or outrageous." The only specific conduct Plaintiff alleges in relation to this claim is Defendant's initiation of a foreclosure sale on the Property. As has been established, Defendant had the right to non-judicially foreclose on Plaintiff's home. Plaintiff provides no explanation of how this conduct or any other conduct was extreme or outrageous. Thus, this claim must fail. *Peterson v. Merscorp Holdings, Inc.*, No. 1:12-CV-00014-JEC, 2012 U.S. Dist. LEXIS 128288, at *17 (N.D. Ga. Sept. 10, 2012) (dismissing the plaintiffs' intentional infliction of emotional distress claim because "[t]hey merely assert[ed] that defendants caused them emotional distress, but fail[ed] to give any exposition of how defendants' behavior was extreme and outrageous, or how severe the distress was"); *see also Constantin v. Wells Fargo Bank, N.A.*, Civil Action No. 2:13-CV-00155-RWS, 2014 U.S. Dist. LEXIS 24842, at *8 (N.D. Ga. Feb. 27, 2014) (dismissing the plaintiff's IIED claim because the defendant had standing to foreclose); *Laborde v. GMAC Mortg., LLC*, Civil Action

No. 1:13-CV-00221-RLV-JCF, 2013 U.S. Dist. LEXIS 191811, at *25 (N.D. Ga. April 25, 2013) (dismissing the plaintiff's IIED claim because "Plaintiff fails to allege which of GMAC's specific actions constitute intentional infliction of emotional distress"), *adopted by* 2013 U.S. Dist. LEXIS 191806 (N.D. Ga. May 15, 2013).

For those reasons, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's IIED claim be **GRANTED** and that claim be **DISMISSED**.

## VII. <u>Injunctive Relief</u>

Plaintiff's next claim seeks an injunction that would stop Defendant from foreclosing on the Property. (Doc. 1 ¶¶ 112-17). He claims that Defendant's actions, if not enjoined, will deprive him of the quiet use and enjoyment of his property, and he will suffer the irreparable harm of being evicted from his home. (*Id.* ¶ 114, 117). Defendant argues this plea for injunctive relief should be dismissed because Plaintiff admits he was in default and has never paid the funds owed to cure his default, and he has not showed success on the merits, a prerequisite for obtaining in junctive relief in federal court. (Doc. 5-1 at 21-22). The Court agrees.

To grant a preliminary injunction or a temporary restraining order, the moving party must demonstrate: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened

injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Four Season Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003) (internal citations omitted). To obtain a permanent injunction the moving party must additionally show "actual success on the merits." *Spottsville v. Barnes*, 135 F. Supp. 2d 1316, 1318 (N.D. Ga 2001). Plaintiff has not demonstrated a substantial likelihood of success on the merits of any of his claims, as the rest of this recommendation shows, and therefore cannot be granted a preliminary injunction or temporary restraining order. Moreover, he cannot be granted a permanent injunction, because he has not enjoyed actual success on the merits in any of his other claims. Furthermore, Plaintiff's injunctive relief claim against is based on the theory that Defendant does not have the authority to foreclose on the Property. As the Court has explained numerous times, Plaintiff has not properly alleged fact that would support a conclusion that Defendant lacks the power to foreclose on the subject Property.

For those reasons, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's injunctive relief claim be **GRANTED** and that claim be **DISMISSED**.

## VIII. <u>Wrongful Foreclosure Claim</u>

Next, Plaintiff brings a claim for wrongful foreclosure under Georgia law, alleging Defendant does not have standing to enforce the note because Defendant is not the owner or holder of the note, nor a beneficiary under the note. (Doc. 1 ¶ 120). Similarly, Plaintiff alleges Defendant cannot produce a "wet ink" signed note, does not own the loan, cannot identify the owner of the loan, and was not assigned or sold the note by the original lender. (*Id.* ¶ 123-24). Instead, Plaintiff alleges that Defendant admits to being the loan servicer in the Notice of Sale (*Id.* ¶ 121), and as the loan servicer, Defendant cannot foreclose on the Property without authorization from the lender (*Id.* ¶ 122). Defendant argues that this claim for wrongful foreclosure should fail because (1) Plaintiff does not state the Property was ever foreclosed upon, and (2) a foreclosure sale by Defendant would not be wrongful. (Doc. 5-1 at 22-24).

To state a claim for wrongful foreclosure, Plaintiffs must show: "(1) a legal duty owed to them by the foreclosing party; (2) a breach of that duty; (3) a causal connection between the breach and the injury they suffered; and (4) damages." *Joseph v. Fed. Home Loan Mortg. Corp.*, No. 1:12–CV–01022–RWS, 2012 U.S. Dist. LEXIS 159355, at *4 (N.D. Ga. Nov. 6, 2012). Further, under Georgia law, "a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies." *Gordon v. S. Cent. Farm Credit, ACA*, 446 S.E.2d 514, 515 (Ga. Ct. App. 1994). In *You v. JP*

*Morgan Chase Bank*, 743 S.E.2d 428, 433 (Ga. 2013), the Supreme Court of Georgia concluded that the holder of a security deed is a secured creditor under the Georgia foreclosure statutes and that "the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed."

Here, the security deed expressly recognizes MERS's right of assignment by granting power of sale "to the successors and assigns" of MERS as nominee for EverBank. (Doc. 5-3 at 3). "Having expressly authorized MERS's involvement in the transaction and its right to assign the Deed, Plaintiff cannot challenge [Defendant's] authority to foreclose on this basis." *Alexis v. Mortg. Elec. Registration Sys. Inc.*, No. 1:11–CV–01967–RWS, 2012 U.S. Dist. LEXIS 29230 (N.D. Ga. March 5, 2012). Deutsche Bank held the Security Deed at the time of the foreclosure, and therefore under *You*, had the authority to foreclose on the property under the deed's power of sale. Under Georgia law, Defendant has the authority to execute a non-judicial foreclosure sale on behalf of Deutsche Bank as the loan servicer. *Pignato I*, Doc. 15 at 22 (quoting *Pignato I*, Doc. 10 at 4). Thus, any attempt to foreclose by Defendant would not be wrongful. Furthermore, as Defendant states, Plaintiff does not sufficiently allege anywhere in his Complaint that a foreclosure

sale of the Property has actually occurred. (*See* Doc. 1). To the extent Deutsche Bank has not foreclosed on the subject Property, Plaintiff cannot assert a cause of action for wrongful foreclosure. *See Lesman v. MERS*, No. 2:12-CV-00023-RWS, 2013 U.S. Dist. LEXIS 21827, at \*13 (N.D. Ga. Feb. 19, 2013) (dismissing a claim for wrongful foreclosure as no foreclosure sale had occurred). Therefore, this claim for wrongful foreclosure must fail.

If the foreclosure has not yet occurred, Plaintiff may assert a claim for attempted wrongful foreclosure. "In Georgia, 'to recover damages for a wrongful attempted foreclosure, the plaintiff must prove a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication.'" *Elliott v. Wells Fargo Bank, N.A.*, No. 15-11131, 2015 U.S. App. LEXIS 16786, at \*2 (11th Cir. Sept. 22, 2015) (quoting *Bates v. JPMorgan Chase Bank, N.A.*, 768 F.3d 1126, 2234 (11th Cir. 2014)). Plaintiff has not alleged that any information in the Notice of Sale (Doc. 1-3) is "untrue and derogatory", and he had not alleged any damages that were a direct result of that publication. (*See* Doc. 1). In fact, he has admitted to being in default on his mortgage when the Notice of Sale was issued, meaning that he was the cause of any damages he suffered from that publication, not Defendant. Therefore, to the extent he is asserting a claim for attempted wrongful foreclosure,

that claim fails and must be dismissed. (Doc. 1-1 at ¶ 15). *See Chadwick v. Bank of Am., N.A.*, Civil Action No. 1:12-CV-3532-TWT, 2014 U.S. Dist. LEXIS 126197, at *14 (N.D. Ga. Sep. 9, 2014) ("Without tender by the Plaintiff, it generally cannot be said that the bank caused any damages – the plaintiff instead causes his own damages by failing to pay.").

For those reasons, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's wrongful foreclosure claim be **GRANTED** and that claim be **DISMISSED**.

## IX.  <u>GFBPA Claim</u>

Finally, Plaintiff brings a claim for a violation of Georgia's Fair Business Practices Act, claiming Defendant violated that statute by making "false and misleading statements about their services claiming to be something other than debt collectors or servicers…." (Doc. 1 ¶ 126). The FBPA prohibits "unfair or deceptive acts or practices in the conduct of consumer transactions." O.C.G.A. § 10-1-393(a). Defendant moves to dismiss this claim because this statute does not apply to residential home mortgage loan transactions. (Doc. 5-1 at 24-25). Defendant is correct.

"Based on the intent of the statute, only the unregulated consumer marketplace falls within the scope of the FBPA, not regulated areas of activity."

55

*Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369, 1375 (M.D. Ga. 2011) (citations omitted). "Since the area of mortgage transactions is heavily regulated by the Truth in Lending Act, the Real Estate Settlement Procedures Act, and the Georgia Residential Mortgage Act, courts have found it appropriate to dismiss FBPA claims that allege injury based on mortgage transactions." *Id.* at 1376; *see also Austin v. Bank of Am., N.A.*, No. 1:11-CV-3346-RWS, 2012 U.S. Dist. LEXIS 37516, *5 (N.D. Ga. March 16, 2012) (explaining that "[t]he FBPA does not apply to residential mortgage transactions" because "[t]he area of mortgage transactions is regulated by the Truth in Lending Act, the Real Estate Settlement Procedures Act, and the Georgia Residential Mortgage Act"). However, consistent with Plaintiff's position, some courts have applied the FBPA to mortgage transactions. *See Stroman*, 852 F. Supp. 2d at 1381 (stating that courts refusing to apply the FBPA to mortgage transactions appear to rely on an overly broad interpretation of the statute's exemption" of application to highly regulated transactions); *Kitchen v. Ameriquest Morg. Co.*, No. 1:04-CV-2750-BBM, 2005 U.S. Dist. LEXIS 43937, at *23 (N.D. Ga. Apr. 29, 2005) (allowing the plaintiff's FBPA claim arising from a mortgage transaction to move past the motion to dismiss stage).

In short, the undersigned acknowledges that there is a split of authority on

whether the FBPA should be applied to mortgage transactions. *See Samuel v. Nationstar Mortg.*, Civil Action No. 1:15-CV-0350-TCB-LTW, 2015 U.S. Dist. LEXIS 181082, *27-29 (N.D. Ga. July 27, 2015) (acknowledging a split of authority on the question of FBPA's application to mortgage transactions), *adopted by* 2015 U.S. Dist. LEXIS 181076 (N.D. Ga. Aug. 13, 2015). However, the undersigned concludes the weight of authority indicates that FBPA claims are not available for foreclosure claims arising out of the heavily regulated area of mortgage transactions. *See, e.g., Sheppard v. Bank of Am., N.A.*, 542 Fed. Appx 789, 793 (11th Cir. 2013) ("As construed by Georgia courts, it appears the FBPA does not apply to transactions that occur in regulated areas of activity, such as loan lending and servicing.") (citing *Chancellor v. Gateway Lincoln-Mercury, Inc.*, 502 S.E.2d 799, 805 (Ga. Ct. App. 1998)); *Keyama-Joy El*, 2016 U.S. Dist. LEXIS 108754, at *18 (explaining that because mortgage transactions are regulated at the state and federal levels, they are specifically exempted from the FBPA); *Jackman v. Hasty*, No. 1:10-CV-2485-RWS, 2011 U.S. Dist. LEXIS 23628, at *17-18 (N.D. Ga. Mar. 8, 2011) (dismissing FBPA claim because mortgage transactions are highly regulated at the state and local levels); *Figueroa v. JP Morgan Chase Bank, N.A.*, No. 1:09-CV-1874-RWS, 2010 U.S. Dist. LEXIS 107918, *13-14 (N.D. Ga. Oct. 7, 2010) (dismissing the plaintiff's FBPA claim arising from a home mortgage transaction because the marketplace for

those transactions is highly regulated); *Stewart v. SunTrust Mortg., Inc.*, 770 S.E.2d 892, 898 (Ga. Ct. App. 2015) (dismissing the plaintiff's FBPA claim arising from a mortgage transaction "because the specific transactions at issue in the case are so regulated").

But even if the FBPA applied to the transaction at issue here, Plaintiff's claim should be dismissed. Plaintiff makes only conclusory assertions regarding this claim and does not assert any of Defendant's specific conduct that would constitute a violation of the GFBPA. Plaintiff has thus failed to state "a plausible claim for relief" regarding his allegations that Defendant violated the FBPA. *Iqbal*, 556 U.S. at 679.

Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's GFBPA claim be **GRANTED** and that claim be **DISMISSED**.

## X.    <u>Declaratory Relief</u>

Plaintiff does not bring a separate claim for declaratory relief in his Complaint. However, he does specifically ask that the Court issue a judicial declaration that Defendant's actions violated the FDCPA. (Doc. 1 ¶ 74, at 35 ¶ 10). Defendant does not address this request for relief in its motion (*see* Doc. 5-1), and Plaintiff argues in his response brief that he properly pled a claim for declaratory judgment in his Complaint (Doc. 10 at 18-20). In its reply brief, Defendant argues that Plaintiff failed to state a claim for declaratory relief. (Doc. 13 at 10-11).

The Declaratory Judgment Act, 28 U.S.C. § 2201, states in relevant part:

In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S. C. § 2201(a). "In order to bring a declaratory judgment action an actual controversy must exist." *Lubin v. Cincinnati Ins. Co.*, No. 1:09-CV-1156-RWS, 2009 U.S. Dist. LEXIS 112019, at *9 (N.D. Ga. Nov. 30, 2009). "The issue is whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Id.* (internal quotations omitted). Here, Plaintiff has failed to show that an actual controversy exists between him and Defendant. Plaintiff fails to state a claim for which relief may be granted on any other grounds, including under the FDCPA. Moreover, as the Court has thoroughly explained, there is no controversy as the Defendant's right to initiate a non-judicial foreclosure sale on behalf of Deutsche Bank. Furthermore, the Court has already addressed whether Defendant violated the FDCPA and finds that it did not.

Accordingly, to the extent Plaintiff brings a claim for declaratory relief, it is **RECOMMENDED** that Plaintiff's claim be **DISMISSED**.

## XI.   Plaintiff's Response Brief

In his response brief, Plaintiff asserts that he has properly stated a claim under the California Consumer Credit Reporting Agency Act ("CCRAA") (Doc. 10 at 2). Plaintiff never mentions the CCRAA in his original Complaint. (*See* Doc. 1). To the extent that Plaintiff seeks to amend his Complaint to add those claims, the Court refuses to address such a request made in a response to a motion to dismiss. *See Rance v. Winn*, 287 Fed. Appx. 840, 841 (11th Cir. 2008) (unpublished opinion) ("The proper method for requesting leave to amend a complaint is by filing a motion."); *see also Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) ("Filing a motion is the proper method to request leave to amend a complaint."). Thus, Plaintiff's attempt to bring a claim under the CCRAA in his response brief fails.

In his response brief, Plaintiff also argues for the first time that he has standing to challenge the sufficiency of the Security Deed and its transfer because MERS was acting as an agent for a fictious entity when it transferred the Security Deed to Deutsche Bank, and therefore had no ownership of the Security Deed. (Doc. 10 at 10-17). However, as Defendant points out in its reply, Plaintiff admitted in his Complaint that EverBank is the original lender. (Doc. 1 ¶¶ 23, 119, 124). Additionally, the Security Deed and Assignment, attached to Defendant's motion to dismiss, clearly state that MERS was acting as nominee for EverBank. (Doc. 5-3 at

3; Doc. 5-4 at 2). Thus, it is clear that MERS was not acting on behalf of a fictitious entity, and this theory of wrongdoing fails.

## Conclusion

In sum, it is **RECOMMENDED** that Defendant's motion to dismiss (Doc. 5) Plaintiff's claims for violations of the Fair Debt Collection Practices Act, Fair Credit Reporting Act, and Georgia's Fair Business Practices Act, and Plaintiff's claims for negligence, intentional infliction of emotional distress, injunctive relief, and wrongful foreclosure be **GRANTED** and that Plaintiff's Complaint be **DISMISSED** in its entirety.

**IT IS SO REPORTED AND RECOMMENDED** this 17th day of April, 2020.

/s/ J. Clay Fuller
J. Clay Fuller
United States Magistrate Judge